## LACLEDE STEEL CO. et al. v. NEWTON et al.

### No. 1975.

District Court, S. D. Illinois, S. D.
April 25, 1934.

Green & Verlie (by H. I. Green), of Alton, Ill., Oris Barth, of Urbana, Ill., Karl K. Hoagland, of Alton, Ill., and Lewis, Rice, Tucker, Allen & Chubb (by Joseph W. Lewis and Milton H. Tucker), of St. Louis, Mo., for plaintiffs.

Manuel M. Wiseman, of Alton, Ill., and Munro Roberts, of St. Louis, Mo., for defendants.

BRIGGLE, District Judge.

The Laclede Steel Company, a Missouri corporation, and the Laclede Tube Company, a Delaware corporation, filed their bill of complaint herein on January 19, 1934, against W. B. Newton and sixty-one other defendants, all citizens of Illinois. The bill is voluminous, but after alleging the necessary jurisdictional facts, alleges among other things that both plaintiffs are the owners of manufacturing plants located near the city limits of Alton, in the county of Madison, Ill. The Steel Company is engaged in the manufacture and fabrication of steel, iron, and metal products; and the Tube Company is engaged in the manufacture of steel tubing. The Tube Company is a subsidiary of the Steel Company, and both are operated under one management and employ large numbers of men.

The bill alleges that both companies have accepted the code of fair competition in their respective industries, promulgated in pursuance of the National Industrial Recovery Act (48 Stat. 195), and have at all times complied with all the provisions thereof.

The bill alleges that the employees of the plaintiff companies organized and adopted the "Employees Representation Plan," being an organization among the employees of their own choosing for the purpose of advancing the interests of said employees; and that a large percentage of the employees of both companies became members of such organization.

The bill further alleges that the plaintiffs and their officers and employees have been subjected to violence, threats, and intimidation by the defendants and their associates; that on the 18th day of December, 1933, and at numerous times thereafter, until the filing of the bill herein, the defendants and large numbers of other people congregated at and near the plants of the plaintiff companies, and by threats and intimidation and by various acts of violence undertook to prevent the employees of the plaintiffs from entering or leaving their plants; and that in consequence thereof the employees of the plaintiff companies, in large numbers, remained inside the plants for several weeks, being unable to go to and from their homes.

The bill alleges that the defendants and others engaged in various forms of disorder, such as the hurling of rocks and other missiles and the discharge of firearms at the employees of plaintiffs, and into the buildings of the plaintiffs, and engaged in many other acts of violence not necessary to enumerate here.

The bill further alleges that this condition prevailed for a long time, and that the same was brought to the attention of the law enforcing officers of Madison county, Ill., the sheriff and state's attorney, and the mayor and chief of police of the city of Alton; and alleges that said law enforcing officers were unwilling or unable to protect the property of the plaintiffs.

The bill alleges that the disorders in question were brought about largely by persons other than employees of the plaintiff companies, although some of the defendants had at former times been employees of the companies, and that a conspiracy existed among all of them to injure the property of plaintiffs and to harass and annoy and intimidate the employees of plaintiffs.

The bill alleges that unlawful acts have been threatened and have been committed,

and other acts will be committed unless restrained, and that substantial and irreparable injury to plaintiffs' property will follow; that as to each item of relief prayed, greater injury will be inflicted on plaintiffs by the denial of relief than will be inflicted on defendants by the granting of relief; that plaintiffs have no adequate remedy at law; and prays that the court will enjoin and restrain the defendants from the further prosecution of the unlawful acts complained of.

The verified bill of complaint having been presented to the court, a temporary stay order was issued on the 19th day of January, 1934, and hearing upon the matters set forth in the bill was set for January 24, 1934.

After due notice to all of the defendants, and after due notice to the mayor and chief of police of the city of Alton, and the sheriff and state's attorney of Madison county, Ill., hearing was had on January 24, 1934, upon the matters alleged in said bill and on the motion of plaintiffs for a temporary injunction. Defendants appeared by their counsel and participated in such hearing, but offered no evidence to controvert the proof that was offered of the matters alleged in the bill. After full hearing a temporary injunction was ordered on the 25th day of January, 1934, enjoining the defendants as prayed in the bill.

On March 1, 1934, the defendants filed their answer, which amounts to a general denial of the material allegations of the bill; and this cause came on for final hearing on March 27, 1934.

The testimony offered at the hearing on the motion for temporary injunction has, by stipulation, become a part of the evidence to be considered in the final determination of this cause, and in addition thereto numerous witnesses have been heard on behalf of both plaintiffs and defendants.

Without discussing the evidence in detail, it is sufficient to say that the evidence demonstrates beyond any possibility of doubt that various acts of violence were perpetrated as alleged in the bill by the defendants and their associates. The record fully justifies the conclusion that the acts of the defendants went far beyond the scope of peaceful picketing and that the lives of the officials and employees of the plaintiff companies have been put in jeopardy and that the property of the companies has been damaged.

Assuming that this situation involves a "labor dispute" within the meaning of chapter 6, title 29 USCA, § 101 et seq., commonly known as the "Norris-La Guardia Act," the principal question involved has become one of whether the plaintiffs, by their allegations and proofs, have brought themselves within the provisions of section 107 of this act, or, in other words, whether sufficient facts have been alleged and proven to confer jurisdiction on this court under this section.

Section 107 (section 7, Original Act) provides that:

"No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

"(b) That substantial and irreparable injury to complainant's property will follow;

"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

"(d) That complainant has no adequate remedy at law; and

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

"Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property: Provided, however, That if a complainant shall also allege that, unless a temporary restraining order shall be issued without notice, a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be issued upon

testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice. Such a temporary restraining order shall be effective for no longer than five days and shall become void at the expiration of said five days. No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court. * * * "

That the proof amply justifies the findings contemplated under paragraphs (a), (b), (c), and (d) of this section has not been seriously challenged. That the proof further justifies the finding under paragraph (e) that the law enforcing officers of the city of Alton and of Madison county, Ill., have either been unwilling or unable to protect plaintiffs' property the court likewise entertains no doubt, but it is contended by defendants that under paragraph (e) of this section plaintiffs' proof is lacking, in that there is no proof that the Governor of the State of Illinois has been unable or unwilling to furnish adequate protection to plaintiffs' property. The defendants earnestly contend that "the public officers charged with the duty to protect complainant's property" includes the chief executive of the state of Illinois. The plaintiffs, on the other hand, contend that this clause includes only the chief law enforcing officers of the city and county wherein the acts of violence are alleged to have occurred, and that there is no necessity for any showing of such inability or unwillingness on the part of the Governor of the State of Illinois.

No question of the validity or constitutionality of the act has been raised by the plaintiffs, but they have accepted the burden of compliance with its provisions, and the only question is whether or not its fair construction, assuming it to be valid, requires a finding that the Governor, as well as the local peace officers, was unable or unwilling to furnish adequate protection to plaintiffs' property.

It will be noted that in paragraph (e) there is a provision for giving personal notice of the hearing on the application for temporary injunction in such manner as the court shall direct to all known persons against whom relief is sought, and also to the "chief of those public officials of the County and City within which the unlawful acts have been threatened or committed, charged with the duty to protect complainant's property." This would seem to point the way to the proper construction of this paragraph, and to indicate what public officers were intended to be included therein. If the language "the public officers charged with the duty to protect complainant's property" was intended to include the chief executive of the state, then there would seem to be no reason why he would not equally be entitled to the notice later provided for; and inasmuch as in the latter part of this section the "public officials" upon whom notice is required to be served are specifically mentioned, and the Governor is not included, it would seem that it was the intention of Congress specifically to exclude the chief executive of the state and to include only those public officials of the county and city within which the unlawful acts are alleged to have been committed.

We are without published judicial precedent upon the construction of this act, but if resort is had to the debates in Congress at the time the act was under consideration, it will be found that this construction is fully justified and expresses the intention of Congress.

After many hearings, the Judiciary Committee of the Senate, on February 4, 1932, submitted a report on the bill in question, recommending that the bill, with suggested amendments, be passed. In the form thus reported, section 7 (section 107, chapter 6, title 29 USCA) in its pertinent part reads as follows: "Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, *and also to those public officers charged with the duty to protect complainant's property.*"

Long and detailed debate then ensued regarding the scope and purpose of the language "those public officers charged with the duty to protect complainant's property." It was argued that the language was so broad as to be incapable of practical operation, and it was suggested that notice to the chief of those officers in the county or city where the acts of violence were said to have taken place would be sufficient to meet the purpose of the act. The discussions in Congress on this question are too voluminous to quote here, but reference is made to the Congressional

Record of March 1, 1932, Volume 75, No. 61, pages 5156 to 5160, inclusive; and to Congressional Record March 8, 1932, page 5683. These debates demonstrate that it was never the intention of Congress, even under the wording of the old section as reported by the Judiciary Committee, that the language should be given the broad construction now contended for by the defendants; but in order to clarify the matter this section was, with the acquiescence of its sponsors, amended to read as in its present form.

From a careful analysis of the debates in both the Senate and the House, it would seem that it was very clearly the intention of Congress that the term "public officers" referred to was intended to include only those of the county or city in which the alleged acts of violence arose, and not the chief executive of the state. Interpreting section 107 in the light of what was the apparent intention of Congress, the court holds that "public officers" as used in this section does not include the Governor of the state.

The court being convinced that the allegations and proof herein, in all other respects, meet the requirements of this act, decree for permanent injunction is ordered. In reaching this conclusion, the court has not found it necessary to pass upon the validity or constitutionality of the act.